UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

VALAINE R. CARROLL                                                                                          PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:05-CV-108-S

JOHN E. POTTER, POSTMASTER GENERAL                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the court upon motion of the defendant John E. Potter, the Postmaster General of the United States Postal Service ("Postal Service") to dismiss, or in the alternative for summary judgment. Because the parties have submitted various exhibits and referred to documents outside of the pleadings, the court will consider the motion as one for summary judgment.[1]

## BACKGROUND

The plaintiff, Valaine Carroll ("Carroll") works for the Postal Service as a Supervisor of Distribution Operations. Carroll filed suit against the Postal Service alleging that the it: (1) interfered with her Family and Medical Leave Act (FMLA) rights when it demanded medical documentation of her absence outside of the time prescribed by the FMLA, and when her supervisor questioned her regarding her medical condition; (2) retaliated against her for exercising her FMLA rights when it issued her a Letter of Warning soon after returning from FMLA leave; and (3)

---

[1] The plaintiff requests that the Postal Service's motion for summary judgment and accompanying memorandum be stricken for failure to include a certificate of service as required by Fed. R. Civ. P 5(d). The court finds that a certificate of service was filed with the motion and the memorandum was incorporated by reference and filed contemporaneously. It is also evident that the plaintiff timely received both documents. Accordingly, the court will consider the motion and memorandum in reaching a decision.

retaliated against her for filing previous Equal Employment Opportunity (EEO) complaints in violation of Title VII.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

### I. FMLA Claims

On November 17, 2003, Carroll failed to provide a mail count which she was required to perform. On November 18, 2003, Carroll left work early after becoming ill. She called the Attendence Control Office that same day, and requested FMLA leave benefits. The next day, Carroll again called the Attendence Control Office and reported that her doctor was keeping her off

work. Carroll was provided with the necessary FMLA paperwork requesting a medical certification of her condition, which was to be returned to that office. Ultimately, she was absent from work from November 18 through December 1, 2003. The record indicates, and Carroll does not dispute, that in addition to requesting FMLA she also requested paid sick leave for this absence.

On November 20, 2003, Carroll's supervisor, J.C. Finley ("Finley") sent a letter to her home. The letter stated that she needed to: (1) provide "medical documentation supporting [her] present absence;" and (2) provide a written statement explaining the condition of her section at turnover on November 17, 2003, "to detail [her] actions to prevent the plan failure and delay of the priority mail volume in [her] section." Upon her return to work on December 1, 2003, Finley questioned her as to why she left work early on November 18. Carroll told Finley that her absence involved FMLA leave and that she did not want to discuss this with him without union representation. Finley allowed her to leave his office, but later called her back for questioning. On December 2, 2003, Carroll's FMLA absence was approved by the Postal Service's FMLA coordinator.

On December 23, 2003, Carroll received a Letter of Warning related to the incomplete November 17 mail count. The Letter concluded that she failed to provide documentation of her hourly mail count as she had been instructed to do by her supervisor. Carroll disputed the warning and filed an appeal. The appeal was denied. After enlisting the help of her union representative, and filing two more appeals, the Letter was ultimately rescinded in its entirety.

Carroll alleges that the request for medical documentation in the November 20 letter, and the December 1 questioning of her by Finley constituted interference with her FMLA rights. She also alleges that the Postal Service retaliated against her for using her FMLA benefits when it issued the December 23 Letter of Warning.

The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506 (6th Cir. 2006). (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA allows an employer to request that an employee submit a medical certification form to support his or her FMLA leave. Once an employer makes a request, an employee has fifteen days, beginning the day after the request, to submit a medical certification form to his employer explaining the reason for his leave of absence. *Frazier v. Honda of America Mfg., Inc.*, 431 F.3d 563, 566 (6th Cir. 2005) (citing 29 C.F.R. 825.305(b)). The FMLA also permits an employer to have its medical staff contact an employee's health care provider for additional information regarding the employee's medical condition when necessary to authenticate or clarify the certification. 29 C.F.R. 825.307. However, when the medical certification is complete, the employer may not ask for additional information. *Id.*

Employers are prohibited from interfering with, restraining, or denying the exercise of employees' FMLA rights, and are prohibited from discharging or discriminating against employees who exercise their FMLA rights. 29 U.S.C. § 2615(a). This prohibition gives rise to two distinct theories for recovery under the FMLA, both of which are asserted by Carroll. These theories are known as the "interference" theory and the "retaliation"theory. *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

The remedies available to plaintiffs establishing a violation of their FMLA rights include compensatory damages, interest, liquidated damages, attorneys fees and costs, as well as equitable

relief. 29 U.S.C. § 2617. The remedies are set forth in 29 U.S.C. § 2617 and are described as follows:

> First, the aggrieved employee may recover "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). In the alternative, if the employee has not lost any wages, salary, or employment benefits, the employee may recover any other monetary losses actually sustained as the result of the employer's violation. 29 U.S.C. § 2617(a)(1)(A)(i)(II).
>
> Second, the employee is entitled to recover the interest on any compensatory damages that he is awarded. 29 U.S.C. § 2617(a)(1)(A)(ii).
>
> Third, the employee may recover liquidated damages equal to the amount of compensatory damages for which the employer is liable. 29 U.S.C. § 2617(a)(1)(A)(iii).
>
> Fourth, the court must award reasonable attorney's fees, reasonable expert witness fees, and other costs, in addition to any judgment awarded to an aggrieved employee. 29 U.S.C. § 2617(a)(3).
>
> Finally, the statute provides that the court may award an aggrieved employee appropriate equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B).

*Johnson v. Honda of America Mfg., Inc.*, 221 F.Supp.2d 853, 858 (S.D. Ohio 2002). Other kinds of damages, including punitive damages and damages for emotional distress, are not recoverable under the FMLA. *Rosanio v. Taco Bell of America, Inc.*, 303 F.Supp.2d 878 (N.D. Ohio 2004); *Johnson*, 221 F.Supp.2d at 858.

Courts have recognized that an employer is entitled to summary judgment when the plaintiff cannot show that she is entitled to any remedy set forth in § 2617 as a result of an alleged violation. *See Harrell v. U.S. Postal Service*, 445 F.3d 913, 929 (7th Cir. 2006) ("[b]ecause Mr. Harrell was not harmed by the unauthorized contact with his physician, § 2617 provides him no remedy, including equitable relief, and the district court correctly granted the Postal Service summary

judgment on this claim"); *Dawson v. Leewood Nursing Home, Inc.*, 14 F.Supp.2d 828, 832 (E.D. Va. 1998) ("a plaintiff must be able to show a reasonable likelihood that a rational trier of fact would award. . . damages or find [an entitlement] to injunctive relief to avoid the entry of summary judgment"); *see also Harcourt v. Cincinnatti Bell Telephone Co.*, 383 F.Supp.2d 944, 962 (S.D. Ohio 2005) ("plaintiffs are not entitled to symbolic victories for technical violations of the Act").

The Postal Service contends that it is entitled to summary judgment as to Carroll's FMLA claims on the basis that she is not entitled to relief under the Act. We agree. Carroll does not contend that she has suffered any loss of wages, salary, or employment benefits as a result of the Postal Service's alleged violations of her FMLA rights. She does assert that she is entitled to other monetary loss sustained as a result of the violation, as well as equitable relief. However, she has produced no evidence suggesting she suffered any such monetary loss, nor has she requested any form of equitable relief. Carroll also asserts that she is entitled to attorneys' fees incurred in bringing this action. The court is persuaded that attorneys' fees should not be available unless a violation of the FMLA is established and a judgment is awarded. *See Dawson*, 14 F.Supp.2d 828, 834 ("where there is no reasonable likelihood of a judgment being awarded, there can be no basis upon which attorneys' fees are recoverable"). Because Carroll is not entitled to any form of relief for the Postal Service's alleged violations of the FMLA, the Postal Service's motion for summary judgment will be granted as to her FMLA claims.

Assuming *arguendo* that Carroll were entitled to relief under the FMLA, summary judgment in favor of the Postal Service as to both her FMLA interference claim and FMLA retaliation claim would still be warranted. The "interference" theory of recovery under the FMLA arises from 29 U.S.C. § 2615(a)(1). It provides that "[i]t shall be unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." *Hoge*, 384 F.3d at 244 (quoting 29 U.S.C. § 2615(a)(1)).  To prevail on her interference claim under § 2615(a)(1), Carroll must establish that the Postal Service interfered with her FMLA rights.  *Id.* She must establish that: (1) she was an eligible employee; (2) the Postal Service is a covered employer; (3) she was entitled to leave under the FMLA; (4) she provided notice of her intent to take leave; and (5) the Postal Service denied her FMLA benefits or interfered with her FMLA rights. *Id*.

There is no dispute that Carroll has established the first four elements.  As to the fifth element, Carroll contends that the Postal Service interfered with her FMLA rights by requesting, through the November 20 letter, that she provide medical documentation of her absence within a six day time frame, rather than the fifteen day time frame set forth in the FMLA.  She also contends her FMLA rights were interfered with by the December 1 inquiry into the reason for her absence.  We disagree.

While Carroll did request FMLA benefits in connection with her absence, she does not dispute that she also requested paid sick leave for that absence as well.  FMLA regulations state that "substitution of paid sick/medical leave may be elected to the extent the circumstances meet the employer's usual requirements for the use of sick/medical leave."  29 C.F.R. 825.207(c).  In accordance with the Postal Service's Employee Labor-Relations Manual, supervisors are responsible for approving sick leave and have the discretion to require employees to produce medical documentation of absences.  Because Carroll requested paid sick leave for her absence, and the Postal Service's inquiries were in accordance with Postal Service policy, no genuine issue of fact exists as to whether the Postal Service interfered with her FMLA rights.

The "retaliation" theory of recovery under the FMLA arises from 29 U.S.C. § 2615(a)(2). It provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *See Arban v. West Pub. Co.*, 345 F.3d 390, 401 (6th Cir. 2003). The Sixth Circuit applies the burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to retaliation claims under the FMLA. *Edgar*, 443 F.3d at 508 (citing *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001)). Carroll must establish a *prima facie* case of discrimination by showing that: (1) she availed herself of an FMLA protected right by notifying the Postal Service of her intent to take FMLA leave; (2) she suffered an adverse employment action; and (3) there is a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Skrjanc*, F.3d at 315. If Carroll establishes a *prima facie* case, the burden shifts to the Postal Service to proffer a legitimate, nondiscriminatory reason for the adverse action. *Id.* Once the reason is proffered, the burden shifts back to Carroll to show that the articulated reason is a pretext designed to mask discrimination. *Id.*

Viewing the facts in the light most favorable to Carroll, no reasonable trier of fact could conclude that she established a *prima facie* case of retaliation. The December 23, 2003, Letter of Warning cannot be considered an adverse employment action. An adverse employment action is any employer action that a reasonable employee would find materially adverse - that is, in this context, any action that might have dissuaded a reasonable employee from exercising her rights under the FMLA. *Burlington Northern & Sante Fe Railway v. White*, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). The Letter of Warning does caution that "future deficiencies will result in more severe disciplinary action being taken against you" and that "such action may include suspension,

reduction in grade and/or pay, or removal from the Postal Service." However, Carroll was never actually suspended, demoted, or terminated as a result of the letter. While she alleges that the letter had the effect of moving her one step along in the Postal Service disciplinary process, after following the proper channels for appeal, the letter was ultimately rescinded. This single Letter of Warning is simply not the sort of action that would dissuade a reasonable employee from exercising her FMLA rights. Additionally, Carroll has failed to establish a causal connection between the exercise of her FMLA rights and the Letter. Although she received the Letter close to one month after requesting her FMLA benefits, she has offered no additional evidence to support a finding that a causal connection exists. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) ("temporal proximity alone does not support an inference of retaliatory discrimination in the absence of other evidence").

Furthermore, even if Carroll could establish a *prima facie* case of FMLA retaliation, the Postal Service has proffered a legitimate non-discriminatory reason for sending the Letter of Warning. It contends that the Letter was justified based on Carroll's failure to follow the express instructions of her supervisor and the resulting delay of priority mail in her section. A plaintiff can rebut the employer's legitimate non-discriminatory reason by showing that it: (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate the adverse employment action. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1998). Carroll, however, provides no evidence creating an issue of fact as to whether the justification for sending the Letter of Warning was pretextual.

### II. Title VII Retaliation

Carroll's assertion that she suffered retaliation in violation of Title VII for filing EEO complaints is based on a number of actions taken against her by the Postal Service. Specifically, she claims the Postal Service retaliated against her by: (1) issuing her the previously described December 23, 2003 Letter of Warning; (2) denying her first choice of leave in favor of more junior supervisors; (3) requiring her to work a disproportionate number of holidays; (4) placing her on a fourteen day unpaid emergency leave during an investigation into improper time entries regarding vacation and sick leave; and (5) issuing her notice of intent to reduce her pay grade level from a full-time supervisor to a part-time mail processing clerk as a result of the investigation into the improper time entries.

Title VII provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation under Title VII, Carroll must establish that: (1) she engaged in protected activity; (2) the Postal Service was aware of her exercise of the protected activity; (3) the Postal Service took an adverse action against her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Johnson*, 215 F.3d at 578. Once a *prima facie* case is established, the Postal Service bears the burden of articulating a legitimate non-discriminatory reason for the adverse action. *Id.* Carroll must then demonstrate that the proffered reason was pretext for discrimination. *Id.* at 578-79.

Carroll's claim for retaliation based on the December 23, 2003 Letter of Warning fares no better under Title VII. The Letter simply fails to rise to the level of an adverse action required to establish a *prima facie* case. She has also failed to produce any evidence to support the finding of a causal connection between the Letter and her EEO complaints or that the Postal Service's legitimate non-discriminatory reason, that she was issued the letter for failure to follow instructions, is pretext. Carroll also fails to establish a *prima facie* case for retaliation based on the denial of her first choice of leave or the requirement that she work various holidays. As inconvenient as being given a low priority for choosing vacation days and being forced to work certain holidays may be, these actions cannot be considered materially adverse. Additionally, she has produced no evidence establishing a causal connection between these actions and her EEO activity. Accordingly, summary judgment is appropriate as to Carroll's claims for retaliation based on these actions.

Carroll's claim of retaliation based on the unpaid leave placement and the receipt of a notice of intent to reduce her pay grade arise out of an investigation into improper entries regarding vacation and sick leave into the Postal Service timekeeping system. A Postal Service audit revealed that a number of managers and supervisors had leave that was not properly entered into the system. A number of employees, including Carroll, were found to have hours that they had not worked added to their pay. Carroll was one of two supervisors placed on a fourteen day unpaid leave period during the investigation. The investigation concluded that Carroll's and the other employees' improper entries were the result of their supervisor's failure to properly input their time. The Postal Service took the position that it was Carroll's and the other employees' responsibility to review their pay stubs and bring these inconsistencies to the Postal Service's attention. Based on her failure to do

so, Carroll received a notice of intent to reduce her pay grade level from a full-time supervisor to a part-time mail processing clerk. The notice of intent was later modified to a letter of warning.

On January 18, 2005, Carroll filed a formal EEO complaint alleging, *inter alia*, that the discipline she received related to the improper time entries was discrimination based on retaliation for filing previous EEO complaints. Before a final agency decision was issued, Carroll initiated this lawsuit, claiming that this discipline constitutes retaliation in violation of Title VII. The Postal Service contends that the court should dismiss these retaliation claims based on Carroll's failure to exhaust her administrative remedies.

Federal courts cannot hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). When the EEOC administrative process is complete, the EEOC will issue the aggrieved party a "right to sue letter" and the party may then properly file a civil action. *Mitchell v. Chapman*, 343 F.3d 811, 821 n.10 (6th Cir. 2003). Where the plaintiff files suit prior to receiving the right to sue letter, the district court is compelled to dismiss the premature action for failure to exhaust administrative remedies. *Id.* Retaliation claims are generally excepted from the requirement of filing an EEOC charge and exhausting administrative remedies because they usually arise after the filing of the EEOC charge. *Abeita*, 159 F.3d at 254. However, this exception to the filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed. *Id.*

Prior to filing the January 18, 2005 EEO complaint, Carroll had filed other EEO complaints. Because the claims at issue are claims for retaliation, they could have reasonably been expected to grow out of these prior EEO complaints. Although, Carroll chose to file the January 18, 2005 EEO

complaint alleging the discipline she received in connection with the improper time entry investigation was retaliation for her previous EEO complaint filings, she was not required to do so under *Abeita* in order to allege these claims in lawsuit before this court. Accordingly, the court does not find dismissal of these claims warranted simply because she filed the January 18, 2005 EEO complaint, when, had she not filed that EEO complaint, the claims would properly be before the court.

Carroll has established the elements of a *prima facie* case of retaliation based on the discipline she received arising from the investigation into the improper time entries. Her prior EEO complaints constitute protected activity of which the Postal Service was aware, and a fourteen day unpaid suspension and a reduction in pay grade are materially adverse employment actions. Although these adverse actions occurred close to four months after her most recent EEO complaint, the fact that out of seventeen supervisors who had improper time entries, Carroll and another were the only two that were subject to these actions is evidence significant enough to establish the existence of a causal link so as to justify an inference of retaliatory motive.

In response to these claims for retaliation, the Postal Service contends that Carroll and the other supervisor were disciplined and singled out from the other fifteen supervisors on the basis that they had the largest amount of improperly recorded hours and received the most unaccounted for leave time pay. Because this is a legitimate non-discriminatory reason, Carroll must establish that it is pretext for discrimination. Carroll is required to establish pretext by showing by a preponderance of the evidence either that the proffered reason: (1) had no basis in fact; (2) did not actually motivate the suspension and reduction in pay grade; or (3) was insufficient to motivate the unpaid suspension and proposed reduction in pay grade. *Manzer*, 29 F.3d at 1984. (6th Cir. 1998).

- 14 -

Carroll argues that because other supervisors had improper time entries as well, and because her supervisor was actually responsible for the errors in entering her time, the Postal Service's reason is insufficient to motivate the unpaid suspension and notice of intent to reduce her pay grade. This argument fails to recognize that she was not the only supervisor receiving this discipline, and unlike her, there is no indication in the record that the other disciplined supervisor filed EEO complaints prior to being disciplined. This argument also fails to recognize that Carroll and the other supervisor were in fact the two employees with the most unaccounted for leave time, each receiving over 160 hours accrued over three to four incidents. Carroll has failed to set forth sufficient evidence for a reasonable jury to reject the Postal Service's proffered reason for the unpaid suspension and propose demotion. Consequently, summary judgment is appropriate as to her claim for retaliation based on these actions.

## CONCLUSION

For the reasons set forth herein, the Postal Service's motion for summary judgment will be granted. A separate order will be entered this date in accordance with this opinion.